UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | | |
|---|---|---|---|
| VICTOR HARRIS, | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 15 CV 50040 | |
| v. | ) | Magistrate Judge Iain D. Johnston | |
| | ) | | |
| CERTCO, INC., et al. | ) | | |
| Defendant. | ) | | |

**MEMORANDUM AND ORDER**

This case involves a collision involving the plaintiff and a truck driver employed by defendant Certco, Inc. Plaintiff Victor Harris was left paralyzed. Before the Court is the defendants' motion for leave to file a third-party complaint for contribution against St. Anthony's Medical Center and two of its healthcare workers, alleging that Mr. Harris was paralyzed not by the accident, but rather by the third-party defendants' malpractice. Dkt. 54. Because the defendants did not diligently investigate and pursue the medical malpractice claim, the motion for leave is denied.

**BACKGROUND**

The following facts are culled from the parties' submissions including exhibits, and are set out solely for the purpose of resolving the motion for leave. The accident occurred on Interstate 90 near Hampshire, Illinois, on November 22, 2014. Mr. Harris was airlifted from the scene by Life Flight and its transport team, Nurse Carissa Trollop and Paramedic Michael Jones. Life Flight transported Mr. Harris to St. Anthony Medical Center ("St. Anthony") in Rockford. CT and MRI scans at the hospital confirmed that he no longer had use of his lower extremities. He was 44 years old at the time of the accident, and since then has been living in a nursing home or similar type of facility.

Less than a month later, on December 15, 2014, plaintiff's counsel wrote to defense counsel to announce that he represented Mr. Harris. At some point after that but before January 26, 2015, plaintiff's counsel forwarded to defense counsel records from St. Anthony. According to defense counsel, the production consisted of six pages, Reply Brief [59] at 1 n.1, but the records from St. Anthony attached to the plaintiff's response to the motion for leave consist of twelve pages, Response [57] at Ex. B. During oral argument on September 27, 2016, plaintiff's counsel clarified that while only six pages were initially produced, on January 29, 2015, the plaintiff produced all of the St. Anthony records to the defendants on CD, which defense counsel did not challenge. According to the records, St. Anthony Nurse Mary Barkley noted that Mr. Harris had moderate movement in his lower extremities and that his knees were up. Motion [54] at Ex. B (notes time-stamped 18:01 (knees) and 18:39 (moderate movement)).

On February 7, 2015, plaintiff's counsel filed suit against Certco, Inc. and its driver, Sandro Jimenez, alleging claims of negligence.

On April 28, 2015, the Court entered a Scheduling Order under Federal Rule of Civil Procedure 16(b). Dkt. 23. Under the order, the Court set April 11, 2016, as the deadline for amended pleadings, new counts or parties, and third-party complaints, giving the parties nearly a year to investigate potential new claims. Fact discovery was set to end August 7, 2016. Those deadlines are the ones the parties themselves proposed. Dkt. 21.

On August 7, 2015, plaintiff's counsel produced to defense counsel records from Life Flight and the Kane County Emergency Communication Center. The Life Flight records were signed by both Nurse Trollop and Paramedic Jones. Motion [54] Ex. B. The Life Flight records note that the plaintiff "Moves all extremities" and that he has "full range of motion" in his extremities. Motion [54], Ex. B at 3, 4. The records also note that the plaintiff "is in full spinal immobilization" and that his "C-collar was repositioned due to improper application." *Id.* at 2. Both the Life Flight and Kane County records refer to the presence of Lifeline Ambulance at the scene before the arrival of Life Flight. Motion [54], Ex. B at 2 (Life Flight); Response [57], Ex. D at 12 (time code 16:29:35) and 16 (time code 16:21:39) (Kane County).

On June 16, 2016, counsel deposed Life Flight's Nurse Trollop. Nurse Trollop testified that Mr. Harris could move all extremities, was able to sense touch anywhere, and that he was not paralyzed when delivered to St. Anthony. Transcript of Trollop Deposition (Motion [54] Ex. A) at 18, 54, 63.

In the days immediately following the deposition of Nurse Trollop, both plaintiff's and defendants' counsel sent numerous e-mails to Nurse Trollop's counsel seeking to quickly schedule the deposition of Paramedic Jones. Reply [59] Exs. A & B.

On July 25, 2016, counsel deposed St. Anthony neurosurgeon Dr. Alexander. Dr. Alexander testified that he recalled hearing sometime after surgery that Mr. Harris was not paralyzed when he arrived at St. Anthony. Motion [54] Ex. D at 27.

On August 16, 2016, the parties obtained records from Lifeline Ambulance. According to the records, Mr. Harris had distal pulse/motor/sensation in all extremities after being extricated from his vehicle. Motion [54] Ex. F at 1.

On August 17, 2016, the parties deposed Paramedic Jones who, like Nurse Trollop, testified that he was certain Mr. Harris was not paralyzed when delivered to St. Anthony. Motion [54] Ex. E at 76, 81.

## ANALYSIS

The defendants seek leave to file a third-party complaint under Federal Rule of Civil Procedure 14(a)(1). Under Rule 14, a defendant may file a third-party claim against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). However, if more than 14 days have elapsed since the defendant filed its original answer, the

defendant must first obtain leave from the court to file its third-party complaint. *Id.* Leave should be given if the proposed third-party claims "'fall[ ] within the general contours limned by Rule 14(a), do[ ] not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice.'" *Ashley v. Schneider Nat'l Carriers, Inc.*, No. 13 CV 3042, 2015 U.S. Dist. LEXIS 95919, at *13 (N.D. Ill. July 23, 2015) (quoting *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 650 (7th Cir. 2002) (internal quotations marks and citation omitted)).

The defendants' attempt to file a third-party complaint comes not only 14 days after their original answer, triggering Rule 14(a)(1), but also after the April 11, 2016, deadline for third-party complaints set in this Court's Rule 16 scheduling order. See Dkt. 23. As a result, the defendants must first establish "good cause" under Federal Rule of Civil Procedure 16(b)(4) for modifying the scheduling order. *See Am. Fam. Ins. Co. v. Hewlett-Packard Co.*, 2001 U.S. Dist. LEXIS 112062, at *4 (N.D. Ind. Sept. 28, 2011) (a party seeking leave to file a third-party complaint after the deadline set in a case management order must establish good cause under Fed. R. Civ. P. 16(B)(4)); *see also Crapnell v. Dillon Cos., Inc.*, No. 14 CV 1713, 2016 U.S. Dist. LEXIS 47170, at **4-5 (D. Co. Apr. 6, 2016) (a court must first find good cause under Rule 16(b)(4) to extend a case management deadline before considering whether to grant leave to file a third-party complaint under Rule 14(a)(1)). In determining whether good cause to extend a case management deadline exists, the court focuses on the diligence of the party needing the extension. *DR Distributors LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2015 U.S. Dist. LEXIS 167343, *12 (N.D. Ill. Dec. 15, 2015). The burden of establishing diligence falls on the movant. *Id.*

During oral argument, the defendants argued that they have diligently pursued their proposed medical malpractice claim since the June 16, 2016, deposition of Ms. Trollop, which counsel asserts is when the defendants first learned that Mr. Harris may not have been paralyzed before arriving at St. Anthony. However, the records produced in discovery during the 18 months before Ms. Trollop's deposition belie that assertion. It is undisputed that the defendants obtained records from Life Flight on August 7, 2015, more than ten months before Ms. Trollop's deposition. In those records, Ms. Trollop and Life Flight paramedic Mr. Jones note that Mr. Harris moved "all" extremities and had a full range of motion in his extremities. The defendants do not contend that they were unaware of the records or notations, but rather argue they "assumed the notation was a mistake based on the evidence in the case to that point." Motion [54] at 3. But there are no contrary notes in the Life Flight record that would support an assumption that the notations about movement were incorrect. Counsel also stated during oral argument that the defendants had assumed that the Life Flight records referred only to movement in Mr. Jones' upper extremities, but the records themselves note movement in "all" extremities. In essence, the defendants decided to treat the Life Flight records as being erroneous and then embarked on a litigation strategy based on their assumption that remained untested until well after the April 11, 2016, deadline for amendments and third-party claims. But a change in litigation strategy does not establish good cause for modifying deadlines under Rule 16. *See Rexnord Indus., LLC v. Bigge Power Constructors,* 947 F. Supp. 2d 951, 962 (E.D. Wisc. 2013) (citing numerous other cases agreeing that a change in strategy does not establish good cause).[1]

---

[1] Although it appears that defendants' counsel diligently pursued the issue of whether Plaintiff was paralyzed after Ms. Trollop's deposition, that diligence is not considered at this point. *See Beauchamp v.*

As for "the other evidence in the case to that point," the defendants refer, in part, to fourteen depositions including of the plaintiff, his daughter, eight police officers, and four treating physicians, none of whom "testified that Plaintiff was not paralyzed or that he had some feeling, strength or range of motion in his legs for a period of time after the accident." Motion [54] at 4. But the defendants submitted none of those transcripts, and therefore have not established that the topic ever came up. Moreover, it is not clear that any of the witnesses other than the plaintiff were in a position to observe or know whether the plaintiff was paralyzed immediately after the accident, and neither the plaintiff's recollections nor the date on which the defendants deposed him are identified.

The other "evidence in the case to that point" also refers in part to the St. Anthony medical records produced no later than January 29, 2015. Defense counsel acknowledges that the records contain a typed timeline of events beginning with Mr. Harris' admission, and that on the timeline Nurse Mary Barkley noted that his knees were up at 18:01 (12 minutes after admission) and that his range of motion in his lower extremities was only moderately impaired at 18:39 (50 minutes after admission). Defense counsel contends the notations appeared on only those occasions, among thousands of pages of St. Anthony records produced, and that other notations by Ms. Barkley on the timeline indicate that Mr. Harris had no range of motion in his lower extremities.

Although the defendants may not have attributed much significance to Ms. Barkley's notations about movement at the time, that does not explain why counsel assumed the Life Flight notations that also noted that Mr. Harris could move all of his extremities were wrong. And it does not explain why defense counsel continued to attribute little significance to the St. Anthony notations, even after obtaining corroborating records from Life Flight that explicitly noted movement in all extremities.

The production of the Life Flight records on August 7, 2015, gave defense counsel ample time to further investigate the issue of movement before the April 11, 2016, deadline to amend or file a third-party complaint. For instance, had counsel attempted to depose Ms. Trollop or Mr. Jones before the deadline, counsel would have quickly and easily determined that each witness stood by the accuracy of their records. The defendants do not identify why they waited until ten months later to depose Ms. Trollop on June 16, 2016. If the defendants had tried to depose her earlier, but despite efforts could not schedule her until after the deadline for third-party complaints, that might have established diligence. But the defendants do not identify when they first subpoenaed Ms. Trollop for her deposition, and they never filed a motion to enforce the subpoena. It is the defendants' burden to establish diligence, see *DR Distributors* 2015 U.S. Dist. LEXIS at *12, but the defendants have established only that they assumed the Life Flight records were wrong and were in no particular hurry to depose Ms. Trollop before the deadline to file a third-party complaint.

Likewise, had the defendants been diligent upon receiving the Life Flight records, they would have been able to obtain records from Lifeline Ambulance, which treated Mr. Harris at the

---

*City of Dixon*, No. 11 CV 50121, 2014 U.S. Dist. LEXIS 29453, at *3 (N.D. Ill. Mar. 7, 2014) (a party cannot establish diligence solely on its conduct after being alerted that it missed a deadline).

scene of the accident and, consistent with the Life Flight records, noted that Mr. Harris had "distal pms" (or pulse/motor/sensation) in "all extremities" after extrication from his vehicle. Motion [54] Ex. F at 1. The defendants contend that they were unable to obtain the Lifeline Ambulance records until after the June 16, 2016, deposition of Ms. Trollop because they did not know which ambulance service was on the scene, and that both plaintiff's and defense counsel instead subpoenaed numerous other Rockford-area ambulance services without success. But Lifeline Ambulance is identified as the ambulance service on the scene on the second page of the Life Flight records. Lifeline Ambulance is also identified twice in the records produced by the Kane County Emergency Communications Center, which defense counsel received on August 7, 2015, along with the Life Flight Records. Response [57] Ex. D at 12 (time code 16:29:35) and 16 (16:21:39). Had the defendants diligently investigated the Life Flight notations about movement obtained August 7, 2015, they could have also obtained records from Lifeline Ambulance that corroborated the evidence that Mr. Harris may not have been paralyzed for a time after the accident, and could have done so long before the April 11, 2016, deadline for third-party complaints.

The defendants argue that their surprise on June 16, 2016, by Ms. Trollop's testimony that Mr. Harris was not initially paralyzed was genuine and reasonable, as evidenced by the fact that plaintiff's counsel was just as surprised. In support, the defendants rely on e-mails plaintiff's counsel sent to Ms. Trollop's attorney anxiously attempting to schedule the deposition of Life Flight paramedic Mr. Jones. At oral argument, plaintiff's counsel vehemently denied any surprise. But even assuming the plaintiff was also surprised, that fact would not support a conclusion that the defendants had been diligent. Rather, it would only go to show that the plaintiffs had also failed to timely and diligently investigate the notations about movement in both the St. Anthony and Life Flight records. Whether the plaintiff was diligent is beside the point because the plaintiff is not seeking to file an amended or third-party pleading after the deadline set forth in the case management order.

Finally, the court addresses the prejudice the defendants allege they will suffer if they are not allowed to assert their third-party contribution claim. Under Illinois law, when an injured party files suit, any contribution claim must be brought as a counterclaim or third-party claim in the injured party's suit. *Harshman v. DePhillips*, 844 N.E.2d 941, 947 (Ill. 2006) (applying 740 ILCS 100/5). Therefore, the defendants argue, any claim of contribution under Illinois' Contribution Act must be brought in this case, rather than filed as a separate action. They contend that denying their motion for leave to file a third-party complaint for contribution in this case will prejudice them because they cannot pursue the claim elsewhere. The Court understands the defendants' predicament and the possible inequity of Illinois law. However, *Harshman* has been the law in Illinois for a decade. Consequently, counsel – particularly defense counsel – have been on notice for a long time that contribution actions must be filed in the injured party's case. As a result, defense counsel should be particularly cognizant of possible third party complaints for contribution. Moreover, before the Court can evaluate the prejudice to the defendants, a factor the defendants contend must be balanced when deciding whether to grant leave to file a third-party claim under Fed. R. Civ. P. 14, the defendant must first clear the good cause hurdle for extending scheduling order deadlines under Rule 16. See *DR Distributors*, 2015 U.S. Dist. LEXIS at *12. As set out above, the focus under Rule 16 is on diligence, and the defendants have simply not met their burden of establishing that they diligently investigated the

basis for a contribution claim by the April 11, 2016, deadline after obtaining supporting documents on January 29, 2015, and August 7, 2015.

## CONCLUSION

The defendants have not met their burden of establishing diligence, and therefore have not established good cause under Fed. R. Civ. P. 16(b)(4) for extending the April 11, 2016, deadline for third-party complaints. As a result, their motion for leave to file a third-party complaint [54] is denied.

Date: October 21, 2016          By:     _____
                                        Iain D. Johnston
                                        United States Magistrate Judge